UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
_____

_____ )
HARVEY RAKOSKI,                           )
                                          )                    **JURY TRIAL**
                                          )                    **DEMANDED**
                                          )
                    Plaintiff             )
                                          )
        v.                                )
                                          )
ADAPTEC SOLUTIONS                         )
LLC AND ERIC ROWLAND                      )
                                          )
                    Defendants            )
_____ )


## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The plaintiff, Harvey Rakoski ("Mr. Rakoski" or "Plaintiff"), is a male resident of

the State of New York residing at 104 McLain Drive, Spencerport, NY 14559.  Spencerport is

located in Monroe County, New York.

2.      Defendant Adaptec Solutions Services, LLC (the "Company") is a foreign limited

liability company operating and headquartered in the state of New York. The Company's principal

office is located at 140 Commerce Drive, Rochester, NY 14623.

3.      Defendant, Eric Rowland ("Rowland") (the Company and Rowland collectively

"Defendants") is an adult male who, upon information and belief, resides in New York.  Rowland

is named in both his individual and official capacities.

## JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Rakoski has brought claims pursuant to the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615, the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1201 et seq., the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 215(a)(3)**,** and 42 U.S.C. §§1981. The court may exercise supplemental jurisdiction over Mr. Rakoski's state law claims. 28 U.S.C. §1367.

5.      Venue is appropriate in the Western District of New York as the Company's acts and omissions giving rise to the claims in this Complaint occurred in the Western District of New York.  Indeed, Mr. Rakoski worked for the Defendants, and was fired by the Defendants, within the Western District of New York. Additionally, Mr. Rakoski resides within the Western District of New York.

6.      This court has jurisdiction over the Company because the Company is a resident of New York, including because its principal office is in New York.  In addition, the Company has purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Rakoski) in New York.  Indeed, the Plaintiff was employed by the Company in the State of New York, was managed by the Company in the State of New York and was terminated by the Company in the State of New York. Indeed, the Company's principal office is in New York and it has registered with the State of New York as a foreign corporation doing business in the State of New York.

7.      This court has jurisdiction over the Defendant Rowland because, upon information and belief, Rowland is a resident of New York and because he purposefully availed

himself of New York law.  Indeed, the Plaintiff was managed by Rowland in the State of New York and was terminated by Rowland in the State of New York.

## STATEMENT OF FACTS

8.        Mr. Rakoski is an African American with brown skin color.

9.        On or around September 21, 2020, Mr. Rakoski was hired by Adaptec Solutions, LLC (the "Company") to work as an electrical lead in Rochester, New York.

10.        Mr. Rakoski was paid on an hourly basis and was not hired as a salaried, exempt employee.  Mr. Rakoski was not exempt from applicable overtime laws and was owed overtime when his hours worked exceeded 40 within a week.

11.        As such, Mr. Rakoski's pay varied given the number of hours that he worked and/or were recorded for him.

12.        At all relevant times, the Company employed 15 or more employees 20 or more calendar weeks during the preceding 12 months.

13.        As such, the Company was a covered employer under the applicable state and federal antidiscrimination laws, including Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and New York State Human Rights Law ("NYSHRL").

14.        Indeed, at all relevant times, the Company employed 50 or more employees 20 or more calendar weeks during the preceding 12 months.

15.        As such, the Company was a covered employer under the Family and Medical Leave Act ("FMLA").

16.        At all relevant times, Mr. Rakowksi's work performance was satisfactory.

17.        Shortly after Mr. Rakoski's hiring, it became clear that he was performing the job duties of the automation technician lead (a position higher than

electrical lead).

18.     Indeed, in or around December 2020, Mr. Rakoski's work as an automation technician lead was formally recognized and he was officially given that title and a pay raise due to his good performance.

19.     Mr. Rakoski was qualified for this role and performed all essential job functions in a satisfactory manner.

20.     Around the time Mr. Rakoski was hired, he began having symptoms of a health condition that would later be diagnosed as urethral stricture (which caused chronic constriction of his urethra).  The symptoms included difficulty, discomfort, and pain related to urination.

21.     Mr. Rakoski's constricted urethra is a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking, sitting, and urinating. In addition, Mr. Rakoski's constricted urethra substantially impairs one or more of his major bodily functions, including, but not limited to, Mr. Rakoski's urinary system and bladder. As such, Mr. Rakoski is disabled under the ADA and NYSHRL.

22.     At all relevant times, Mr. Rakoski's supervisor was Eric Rowland ("Rowland"), the Company's operations facility manager.

23.     Rowland is a Caucasian man with light skin color who, upon information and belief, is not disabled.

24.     At that time, Mr. Rakoski was the only African American employed as Rowland's supervisee.

25.     Throughout Mr. Rakoski's employment, he was expected to often work through lunch.  This expectation was made clear by management, including by Rowland.

26.     Indeed, Mr. Rakoski worked through lunch at least 3 days a week during the

entirety of his employment, and sometimes more often than that.

27.     Despite working through lunch at least 3 days a week during each week of his employment, Mr. Rakoski was instructed by Rowland that he must clock out 30 minutes per day for an unpaid lunch, even when he was working during this time.

28.     Rowland made clear that Mr. Rakoski was to clock out even when he continued to perform work during that time, as was frequently required in his job.

29.     When Mr. Rakoski would forget to punch out, or otherwise would not punch out, because he was diligently working through his lunch (in keeping with the Company's expectations), Rowland would unilaterally (and often without telling Mr. Rakoski) alter Mr. Rakoski's time records to record a 30 minute unpaid lunch that Mr. Rakoski did not take (thus deleting from Mr. Rakoski's time records 30 minutes per day of working time).

30.     Rowland knew that Mr. Rakoski was working during the time he deleted from the time records, and certainly did not check with Mr. Rakoski to ask whether he was working.

31.     These time record alterations by Rowland reduced the amount of compensable hours shown on Mr. Rakoski's time card and thus reduced Mr. Rakoski's pay.

32.     Additionally, Rowland instructed Mr. Rakoski to punch out after his normal shift even when Mr. Rakoski had to continue to perform work.

33.     Rowland made clear that Mr. Rakoski was still expected to perform work off the clock, including by continuing to perform work after his normal shift ended, but insisted that he clock out during the period of this extra work and made clear that Mr. Rakoski was not allowed to clock in (or to stay clocked in) to receive pay for this extra work beyond the allocated shift.

34.     During Mr. Rakoski's employment, he consistently worked at least an

additional 2 hours per week past his normal shift and indeed often worked an additional 3 hours or more per week past his usual shift.

35.     At all relevant times the Company and Rowland were aware that Mr. Rakoski was working at an additional 2 to 3 hours, or more, beyond his shift per week.

36.     Mr. Rakoski was not paid for the 2 to 3 hours or more that he worked beyond his shift each week.

37.     Nor was Mr. Rakoski paid for the at least 1 and one half hours (a minimum of three half hour lunch periods) he worked each week while working through lunch.  Indeed, sometimes Mr. Rakoski worked through more than 3 lunch breaks per week and was thus deprived of more than 1 and one half hours of pay per week.

38.     Accordingly, during each week of Mr. Rakoski's employment he was not paid any pay at all for at least 3.5 to 4.5 hours of work that he performed and was owed.

39.     Because, in keeping with the standard shift schedule, Mr. Rakoski virtually always worked at least 40 hours per week even before this unpaid working time was considered, the 3.5 to 4.5 (or more) hours of working time for which Mr. Rakoski was not paid on a weekly basis typically constituted work in excess of 40 hours per week, and thus he should have been paid for this time at an overtime time (one and a half) rate (which the Company failed to do).

40.     Defendants purposely refused to provide Mr. Rakoski with both straight time and overtime pay for these mandated off the clock hours.

41.     In or around the beginning of 2021, Mr. Rakoski continued to have symptoms of his constricted urethra condition, including pain and trouble urinating, among other symptoms.

42.     In or around March 2021, the symptoms that Mr. Rakoski had been having all along were finally diagnosed as urethral stricture (which caused chronic constriction of his

urethra), and his doctor recommended surgery to alleviate the symptoms he had been having.

43.     On or around March 18, 2021, Mr. Rakoski disclosed his disability to Rowland and Lori Anastasi ("Anastasi"), a Human Resources ("HR") generalist for the Company.

44.     At that same time, Mr. Rakowksi also requested from the Company the reasonable disability-related accommodation of two weeks off from work in order to have this invasive disability-related surgery and to recover.

45.     This requested disability-related accommodation was not an undue burden on the Company.

46.     The Company putatively granted this accommodation.

47.     Mr. Rakoski accordingly commenced his leave of absence and underwent the disability-related surgery.  The recovery process was unexpectedly protracted, and Mr. Rakoski requested the reasonable accommodation of additional recovery-related time off from Rowland, noting that he had a follow up appointment on April 7, 2021 and would know when he could return after that appointment.

48.     Regardless of the fact that Mr. Rakoski's request for time off had been granted, Rowland contacted Mr. Rakoski several times during his recovery to ask over and over when Mr. Rakoski was coming back to work and pressured Mr. Rakoski to return as soon as possible.

49.     Because of the pressure that Rowland put on him to return swiftly, Mr. Rakoski returned to work on or around April 12, 2021, despite the fact he was still having pain from the surgery and would have wanted to stay on leave longer to more fully recover if he was not being pressured to return.

50.     Despite the pain he was in, Mr. Rakoski successfully commenced work and performed all essential functions of his position in a satisfactory manner.

51.     On or around May 15, 2021, the Company asked Mr. Rakoski to begin performing some work at a facility in Alabama on a part time and/or temporary basis, and he did so.

52.     Mr. Rakoski's home office and worksite at the Company was still in New York (and he continued to be a New York employee, including by performing work in New York and paying New York income tax), but he travelled to Alabama frequently.

53.     Mr. Rakoski's son, who was seven years old at the time, has Cerebral Palsy ("CP"), and he often had seizures or other health emergencies.  This CP constitutes a serious health condition for which Mr. Rakoski's son receives ongoing medical care.

54.     In or around August 2021, due to Mr. Rakoski's son's serious health condition, Mr. Rakoski requested some intermittent time off in the future to care for his son.  In doing so he disclosed his son's condition.

55.     As of September 21, 2021, Mr. Rakoski would have been an employee for at least 12 months and he had already worked in excess of 1250 hours during the preceding 12-month period.

56.     As such, Mr. Rakoski would become eligible for FMLA leave in or around September 2021, and he was therefore on the verge of becoming eligible to utilize FMLA leave.

57.     Additionally, Mr. Rakoski's son's disability obviously constituted a serious health condition, which served as a legitimate basis for protected leave under the FMLA.

58.     Therefore, the Company was on notice of Mr. Rakoski's likely future need for FMLA leave and indeed Mr. Rakoski had made it clear to the Company that he wanted to utilize FMLA leave once he became eligible for it.  This constituted a request for protected leave.

59.     On one occasion, because a flare up of his son's CP symptoms had caused a health emergency that ended up causing his son to be hospitalized, Mr. Rakoski emailed Rowland a video of his son in the hospital to demonstrate the exigency of the circumstances.

60.     Shortly thereafter, in or around September 2021, Rowland called Mr. Rakoski into a meeting with Karen Marsh ("Marsh"), the human resources manager, and Don Barnard ("Barnard"), the then-operations manager.

61.     Marsh and Barnard are both Caucasian and have light skin color.

62.     Upon information and belief, neither Marsh, nor Barnard are disabled.

63.     Shockingly, Rowland, Marsh, and Barnard informed Mr. Rakoski that he was being disciplined for taking time off for his son's health emergency (when his son was hospitalized).

64.     Rowland disciplined Mr. Rakoski for the email that Mr. Rakoski had sent him showing that his son was in the hospital due to his CP, stating that he (Rowland) found it disturbing that Mr. Rakoski emailed him regarding his son's medical emergency.

65.     In the meeting, it was made clear to Mr. Rakoski that the Company did not intend to allow time off in the future for him to care for his son, even though such future time off should have been FMLA protected.  Further, the Company made clear through words and actions that Mr. Rakoski would face retaliatory adverse actions, including discipline, for seeking to take time off to care for his disabled son, which was clearly intended to discourage Mr. Rakoski from utilizing protected leave in the future to care for his son.

66.     This sudden targeting of Mr. Rakoski for protected activity was part of a larger pattern of the Company engaging in illegal activity that concerned Mr. Rakoski.

67.     At this meeting, Mr. Rakoski raised protected concerns about the Company's

illegal treatment of him, including regarding the fact that he was improperly not being paid for all hours that he worked, including by having 30 minutes docked for lunch despite frequently working through lunch at the Company's insistence and by not being paid for the work that he consistently performed beyond his shift.

68.     Mr. Rakoski also raised protected concerns regarding the fact that he was being retaliated against for asking for time to care for his son due to his son's serious health condition.

69.     Upon information and belief, Marsh, Barnard, and Rowland did not take action to address Mr. Rakoski's protected concerns.

70.     After this meeting, Barnard told Mr. Rakoski that he would speak with him more about Mr. Rakoski's need for leave to take care of his disabled son, but he never did.

71.     Further, following the meeting Mr. Rakoski did not receive any FMLA paperwork, nor did the Company inform Mr. Rakoski of his rights under the FMLA.

72.     Notably, at this time (and at all relevant times), the Company employed 50 or more employees within a 75 mile radius of Mr. Rakoski's work site.

73.     By September 21, 2021 Mr. Rakoski had worked for 12 or more months for 1250 or more hours.  Accordingly, he was eligible for FMLA leave.

74.     Despite this, because of fear of retaliation, he did not take FMLA leave in late September or October 2021.

75.     In or around the beginning of November 2021, Mr. Rakoski began suffering from serious lower back pain that was later diagnosed as segmental and somatic dysfunction of the cervical and lumbar region ("chronic back pain").

76.     Mr. Rakoski's chronic back pain is a physical impairment that substantially limits one or more of Mr. Rakoski's major life activities, including, but not limited to, sitting,

walking, running, and performing certain strenuous activities without pain. In addition, chronic back pain substantially impairs one or more of Mr. Rakoski's major bodily functions, including, but not limited to, his muscular skeletal functioning. As such, Mr. Rakoski is further disabled under state and federal law.

77.     Additionally, Mr. Rakoski's chronic back pain was a serious health condition for which he received continuing care by a healthcare provider.

78.     During a flair-up of his disability symptoms, Mr. Rakoski disclosed his back-related disability to Rowland and asked for the reasonable accommodation of putting off his regularly scheduled trip to Alabama for three days so that he could seek treatment for his disability.

79.     Rowland putatively granted this request for a reasonable accommodation, although he seemed annoyed by the request.

80.     In or around November 2021, Mr. Rakoski's wife began to have symptoms that were later diagnosed as Multiple Sclerosis (MS).

81.     Importantly, Mr. Rakoski's wife's MS is a serious health condition as defined by the FMLA, including because she received inpatient care and/or continuing treatment by a medical provider for it.

82.     In or around December 2021, Mr. Rakoski informed Rowland about his wife's MS diagnosis, and Mr. Rakoski asked to be able to take intermittent FMLA leave to care for her as needed.

83.     Indeed, as of December 2021, Mr. Rakoski had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period.

84.     At all relevant times, the Company employed 50 or more employees within

75 miles of Mr. Rakoski's worksite during 20 or more calendar workweeks during the relevant calendar years.

85.     As such, Mr. Rakoski was an eligible employee and was eligible for, and entitled to, FMLA leave.

86.     In addition, Mr. Rakoski's wife's MS, Mr. Rakoski's son's CP, as well as Mr. Rakoski's own constricted urethra and chronic back pain, constituted serious health conditions, and therefore served as legitimate bases for protected leave under the FMLA.

87.     In or around December 2021, Anastasi (HR) reached out confirming that Mr. Rakoski intended to use FMLA leave to care for his wife.

88.     Through interactions with Anastasi and others in Company management, Mr. Rakoski received the impression that his requests to be allowed to take intermittent leave would be approved.

89.     Anastasi is Caucasian and has light skin color.

90.     Upon information and belief, Anastasi is not disabled.

91.     Around this time, Mr. Rakoski stopped working in Alabama and again resumed working full time at the Company facility in New York.

92.     Notably, throughout Mr. Rakoski's time with the Company, Rowland treated non-white employees less favorably than white employees.

93.     Indeed, Rowland frequently would speak down to Mr. Rakoski and a non-white (Asian) colleague of Mr. Rakoski's.

94.     Rowland additionally, actively encouraged employees to make racially offensive jokes in the workplace.

95.     These jokes and differential treatment also extended to employees with disabilities.

96.     For example, in addition to treating Mr. Rakoski poorly based on his disabilities Rowland also treated a colleague of Mr. Rakoski's poorly who is, upon information and belief, mentally disabled (neurodivergent/autistic).

97.     In or around the beginning of January 2022, Mr. Rakoski took one day of intermittent FMLA leave to accompany his wife to steroid infusions at a medical facility for her serious health condition.

98.     Around this time, and in a clear act of retaliation and discrimination, Mr. Rakoski's work desk was removed from his workspace and given to a new, white employee.

99.     Notably, in addition to his desk being given to a white employee, all of his personal items were strewn on the floor.

100.    Upon information and belief, white employees were never treated in such a manner, with their desks taken without notice and their personal belongings strewn on the floor.

101.    In or around the beginning of March 2022, Mr. Rakoski took a day of intermittent FMLA leave to care for his son's serious health condition.

102.    In or around the beginning of March 2022, Mr. Rakoski's wife was also diagnosed with thyroid tumors.

103.    Ms. Rakoski's wife's thyroid tumors are also a serious health condition requiring inpatient care or ongoing treatment by a healthcare provider.

104.    Indeed, Ms. Rakoski underwent both inpatient care for this condition (including surgery) and ongoing treatment.

105.    Mr. Rakoski shared this diagnosis with Rowland and indicated he might need to take some FMLA protected time off as a result.  This constituted a further request for FMLA leave on a different basis (the thyroid tumors of his wife) than the previous requests.

Mr. Rakoski also reiterated his request to be allowed to take FMLA leave for the other serious

health conditions of his wife and son.

106.     As such, Mr. Rakoski again requested FMLA paperwork to care for his close

family members.

107.     On March 23, 2022, Mr. Rakoski's wife had a medical appointment and Mr.

Rakoski's son was suffering from a medical emergency related to his son's cerebral palsy.

108.     Mr. Rakoski therefore needed to remain home to care for his son and wife.

Accordingly, he requested that day off under the FMLA.

109.     Shortly thereafter, in or around March 24, 2022, Rowland brought Mr. Rakoski

into a meeting with Scott Vilinsky ("Vilinsky"), the new Operations Manager, wherein Mr.

Rakoski was verbally reprimanded for taking time off to take care of his son and wife. They

claimed that Mr. Rakoski had been a "no show" on March 23, 2022.

110.     Vilinsky is Caucasian and white.

111.     Upon information and belief, Vilinsky is not disabled.

112.     At this meeting, Mr. Rakoski raised protected concerns that his time off on

March 23, 2022 had been to care for his son and wife related to their serious health conditions

and was thus covered by FMLA.  Mr. Rakoski further raised the concern that it was improper to

discipline him for taking off this protected time to care for his family members due to their

serious health conditions.

113.     The next day, on or around March 25, 2022, Mr. Rakoski received an email from

Anastasi asking him for medical documentation, which he provided to her shortly thereafter.

This medical documentation clearly showed the protected purpose of the FMLA leave day Mr.

Rakoski took off on March 23, 2022.

114.     On or around March 29, 2022, Mr. Rakoski was given a written reprimand for the same FMLA-protected absence that he had previously been given a verbal reprimand for, namely for taking protected intermittent FMLA leave on March 23, 2022.

115.     Mr. Rakoski again raised protected concerns that his time off was protected under FMLA and that it was improper to discipline him for this absence, but Rowland told Mr. Rakoski that it was not covered because he had supposedly not been officially approved for FMLA by HR.

116.      Despite this claim, neither Rowland nor anyone else at the Company during this period asked Mr. Rakoski for any further paperwork or medical documentation, nor was it explained why Mr. Rakoski's repeated leave requests had not been approved or what further Mr. Rakoski needed to do to get such requests approved.

117.     In this meeting, Mr. Rakoski also raised protected concerns that he frequently worked extra hours for which he was not paid.

118.     Shockingly, in response, Rowland falsely claimed that Mr. Rakoski sometimes left work early.

119.     Importantly, Mr. Rakoski explained to Rowland that his timeclock system was set on Central Time because he had been working in Alabama, and he had not in fact left work early.

120.     Furthermore, even if he had been leaving work early (which he had not), leaving work early was not justification for the Company to improperly alter his time records and/or fail to pay him for all hours worked.

121.     Mr. Rakoski also informed Rowland at this meeting that his wife had recently also been diagnosed with thyroid tumors and that he would likely need to take more FMLA

leave in the future to take care of her.

122.     In or around the end of March 2022, Anastasi informed Mr. Rakoski that he had officially been approved for intermittent FMLA leave.

123.     The Company did not rescind the discipline that Mr. Rakoski had been issued on or around March 29, 2022, concerning his previous absence which should have been classified as FMLA-protected leave.

124.     On or around April 16, 2022, Mr. Rakoski emailed Heather Belknap ("Belknap"), in human resources, and Anastasi to request FMLA leave for April 18, 2022, to April 22, 2022, to care for his son because his wife would be unable to care for his serious medical condition because of her own upcoming medical treatments, including upcoming thyroid surgery.

125.     Additionally, although he requested the leave primarily to care for his son, Mr. Rakoski also requested leave to care for his wife.

126.     From approximately April 18 to April 22, 2022, Mr. Rakoski took one week of protected-FMLA leave because his wife had undergone thyroid surgery and he needed to therefore care for his son, who had serious medical conditions and needed daily care.

127.     On or around April 25, 2022, which was Mr. Rakoski's first scheduled shift after April 22, 2022, he returned to work.

128.     Upon returning to work, Rowland was outwardly hostile with Mr. Rakoski. For example, Mr. Rakoski was shut out of decision-making processes, and he was given menial tasks that were not a part of his job description and/or that he had not previously been required to do, like cleaning, moving a Caucasian coworker's office, and conducting part inventory.

129.     Rowland also began checking up on Mr. Rakoski frequently and accusing him of not doing his work, which was patently false.

130.     On or around May 6, 2022, Mr. Rakoski went out to a working lunch with seven of his colleagues, as they often did on Fridays.

131.     The eight of them left work together and returned together.

132.     This was a working lunch during which Mr. Rakoski did a significant amount of work for the Company.

133.     Indeed, Mr. Rakoski answered emails while on this lunch and discussed various work-related issues with his colleagues while on the lunch (including engaging in problem solving related to an issue on one of the projects).

134.     Mr. Rakoski's colleagues did not punch out for lunch as they continued to perform work throughout the lunch period.

135.     Not punching out for these working lunches was standard throughout the Company and just about all of Mr. Rakoski's colleagues did this on a weekly basis.

136.     Indeed, Mr. Rakoski had previously been told by Company management that clocking out for these lunches was not necessary and that they were considered working time.

137.     At the end of the workday, Rowland called Mr. Rakoski into a meeting with Anastasi and Vilinsky.

138.     Rowland told Mr. Rakoski that he saw Mr. Rakoski leave for lunch around 11:30 am and return around 12:30 pm and that he had thereby committed time theft.

139.     This was not true, as Mr. Rakoski had not only worked through lunch, he had also clocked out for a lunch period.

140.     Mr. Rakoski made clear that he had been at lunch with seven of his

colleagues (all of whom were white/Caucasian and, upon information and belief, non-disabled).

141.   Mr. Rakoski was told that there would be an investigation on Monday.

142.   Upon information and belief, there was no investigation into the baseless allegation that Mr. Rakoski had committed time theft.

143.   Rowland did not allege that he would investigate the seven non-African American and/or non-disabled employees who had attended the working lunch for similar alleged infractions.

144.   Nor did he allege to investigate employees who had not taken protected leave for similar alleged infractions.

145.   Indeed, Mr. Rakoski's 7 other colleagues who had attended the working lunch with him, upon information and belief, had not clocked out (even for the 30 minutes Mr. Rakoski did) and were not investigated or disciplined.

146.   Furthermore, whenever employees failed to clock out for lunch, or were out longer than they clocked out for, it was standard procedure for their supervisor to simply alter the time.  When this occurred, employees were not typically disciplined, let alone fired.

147.   On or around May 7, 2022, Mr. Rakoski was locked out of his Company email account.

148.   On or around Monday, May 9, 2022, Anastasi called Mr. Rakoski and informed him that he was terminated.

149.   Upon information and belief, the decision to terminate Mr. Rakoski was made by Rowland.

150.   As such, Mr. Rakoski was involuntarily terminated by the Company on May 9, 2022.

151.    Notably, Mr. Rakoski was terminated within just two weeks after taking FMLA-protected leave.

152.    Mr. Rakoski asked to speak with Anastasi regarding his termination, seeking to exercise his right to appeal under the progressive discipline policy.

153.    Anastasi refused to speak with him.

154.    That same day, Mr. Rakoski also emailed CEO Shirish Pareek to appeal his termination. Mr. Pareek declined to discuss it with Mr. Rakoski and upon information and belief, the Company never conducted any investigation related to Mr. Rakoski's appeal.

155.    Upon information and belief, none of the other employees with whom Mr. Rakoski went to lunch were disciplined for the incident and certainly none of them were fired.

156.    Indeed, these employees were out for lunch the same amount of time (or more time) than Mr. Rakoski and only clocked out for the same (or less) time than he did.

157.    These seven other employees who faced no adverse actions for attending the lunch are all Caucasian; upon information and belief, not disabled; and upon information and belief, had not taken protected leave.

158.    Similarly, the other automation technician lead, Frank Burton ("Burton"), upon information and belief, was never disciplined for taking long lunches with his team members (and being clocked in during these lunches), even though he frequently did so.

159.    Burton has light skin color.

160.    Upon information and belief, Burton is not disabled, nor has he taken protected leave.

161.    While Mr. Rakoski did not do anything wrong, if he had done something wrong, the Company skipped one or more steps in its progressive discipline policy in determining that Mr.

Rakoski should be terminated.  In contrast, non-African American and non-disabled employees routinely received more steps of progressive discipline before facing termination for similar offenses.

162.     When Mr. Rakoski applied for unemployment benefits, he learned that the Company reported to the Department of Labor that his official reason for termination was "lack of work," and Mr. Rakoski was granted benefits.

163.     Mr. Rakoski's termination took place in New York, and, upon information and belief, Rowland was in New York when he made the decision to fire Mr. Rakoski and when the Company actually terminated Mr. Rakoski.

164.     On September 19, 2022, Mr. Rakoski timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

165.     On November 18, 2022, Mr. Rakoski requested a dismissal for administrative convenience from the NYSDHR.

166.     The NYSDHR issued an administrative convenience dismissal on December 9, 2022.

167.     On February 16, 2023, the EEOC issued Mr. Rakoski a Right to Sue letter.

168.     This lawsuit is timely filed.

## COUNT I

## (Interference and Retaliation with Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)

## Plaintiff v. All Defendants (the Company and Rowland)

169.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

170.     The Company is (and all relevant times was) engaged in an industry affecting commerce.

171.     At all relevant times, the Company employed 50 or more employees for 20 or more calendar weeks in the current and/or proceeding calendar years.

172.     As such, the Company is (and at all relevant times was) an employer under the FMLA.

173.     In addition, the Company employed 50 or more employees within 75 miles of the location at which Mr. Rakoski worked.

174.     Mr. Rakoski was an eligible employee under the FMLA because he had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

175.     Mr. Rawkoski suffered from one or more serious health conditions, including a constricted urethra and back tension, which required continuing care from a medical provider.

176.     Mr. Rakoski's close family members, including his son and wife, likewise had serious health condition requiring continuing care from medical providers.

177.     Mr. Rakoski requested FMLA leave including in the form of both intermittent FMLA leave and continuous FMLA leave, related to the need to take time off for his own serious health conditions and/or to provide care for his son's and wife's serious health conditions.

178.     The Defendants interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Mr. Rakoski's rights under the FMLA.  For example, the Defendants, including through their agents, disciplined Mr. Rakoski for using leave to which he was entitled (thereby denying the leave), clearly threatened Mr. Rakoski with further retaliation if he took future leave (thus forcing Mr. Rakoski not to take leave he wanted to take and was entitled to take), and eventually terminated Mr. Rakoski based on absences that were protected by the FMLA (thus retroactively denying his leave).

179.     In doing so, the Defendants unlawfully denied Mr. Rakoski the ability to utilize leave under the FMLA.

180.     The Defendants likewise unlawfully failed to restore Mr. Rakoski to the same or similar position when he sought to return from protected FMLA leave (including by taking away his desk).

181.     Defendants, including by and through its agents, retaliated and/or discriminated against Mr. Rakoski for requesting and/or utilizing FMLA leave by subjecting Mr. Rakoski to adverse actions, including, but not limited to, by criticizing and/or reprimanding Mr. Rakoski seemingly in retaliation for requesting and/or utilizing FMLA leave in a manner that constituted a constructive denial, unjustified discipline, subjecting him to a hostile and harassing work environment, taking away his desk, and the termination of the Plaintiff's employment.

182.     Defendants' actions were willful and in bad faith.

183.     Rowland was an employer under the FMLA because he had the power to hire and/or fire Mr. Rakoski, supervised and controlled Mr. Rakoski's conditions of employment including his work schedule, played a role in determining Mr. Rakoski's rate and method of payment, and/or played a role in maintaining Mr. Rakoski's employment records.

184.     As a direct and proximate result of the Defendants' violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

185.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. The Company**

186.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

187.     Mr. Rakoski's urethral stricture (which caused chronic constriction of his urethra) was and is an impairment that substantially limits one or more major life activities, including, but not limited to, walking, sitting, and urinating. In addition, Mr. Rakoski's constricted urethra substantially impairs one or more of his major bodily functions, including, but not limited to, Mr. Rakoski's urinary system. As such, at all relevant times, Mr. Rakowki was disabled under the Americans with Disabilities Act ("ADA").

188.     Mr. Rakoski segmental and somatic dysfunction of the cervical and lumbar region ("chronic back pain") was and is an impairment that substantially limits one or more major life

activities, including, but not limited to, sitting, walking, running, and performing strenuous activity. In addition, lower back pain substantially impairs one or more of Mr. Rakoski's major bodily functions, including, but not limited to, muscular skeletal functioning. As such, at all relevant times, Mr. Rakoski was disabled under the Americans with Disabilities Act ("ADA").

189.    At all relevant times, the Company was an employer as defined by federal anti-discrimination laws, including the Americans with Disabilities Act, employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

190.    At all relevant times, Mr. Rakoski was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

191.    Mr. Rakoski disclosed his disabilities to the Company, the Company was aware of Mr. Rakoski's disabilities, and/or the Company regarded Mr. Rakoski as disabled.

192.    Mr. Rakoski requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, being allowed to utilize medical leaves.

193.    The Company denied some or all of the reasonable accommodations requested by Mr. Rakowki, including his requests for leaves (both by making him come back earlier than he was ready and by retroactively denying the accommodation request by punishing him and disciplining him for taking leave).

194.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Mr. Rakoski's reasonable accommodation requests.

195.    Mr. Rakoski's requested disability-related accommodations did not pose an undue burden on the Company.

196.    The Company, by and through its agents, discriminated against Mr. Rakoski due to his disabilities by subjecting Mr. Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

197.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Rakoski.

198.    Upon information and belief, the Company replaced Mr. Rakoski with a lesser or similarly qualified, non-disabled employee.

199.    As a direct and proximate result of the Company's violation of the ADA, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

200.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT III**

**(Disability Discrimination and Failure to Accommodate under New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (the Company and Rowland)**

201.      The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

202.      Mr. Rakoski's urethral stricture (which caused chronic constriction of his urethra) was and is an impairment that substantially limits one or more major life activities, including, but not limited to, walking, sitting, and urinating. In addition, Mr. Rakoski's constricted urethra substantially impairs one or more of his major bodily functions, including, but not limited to, Mr. Rakoski's urinary system. As such, at all relevant times, Mr. Rakoski was disabled under the New York State Human Rights Law.

203.      Mr. Rakoski segmental and somatic dysfunction of the cervical and lumbar region ("chronic back pain") was and is an impairment that substantially limits one or more major life activities, including, but not limited to, sitting, walking, running, and performing strenuous activity. In addition, lower back pain substantially impairs one or more of Mr. Rakoski's major bodily functions, including, but not limited to, muscular skeletal functioning.  As such, at all relevant times, Mr. Rakoski was disabled under the New York State Human Rights Law.

204.      The Company was an employer as defined by state anti-discrimination laws, including the NYSHRL.

205.      At all relevant times, Mr. Rakoski was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

206.     Mr. Rakoski disclosed his disabilities to Defendants, Defendants were aware of Mr. Rakoski's disabilities, and/or Defendants regarded Mr. Rakoski as disabled.

207.     Mr. Rakoski requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, being allowed to utilize medical leaves.

208.     The Defendants denied some or all of the reasonable accommodations requested by Mr. Rakowki, including his requests for leaves (both by making him come back earlier than he was ready and by retroactively denying it by punishing him for taking leave).

209.     The Defendants and their agents failed to engage in an interactive dialogue related to some or all of Mr. Rakoski's reasonable accommodation requests.

210.     Mr. Rakoski's requested disability-related accommodations did not pose an undue burden on Defendants.

211.     Defendants, by and through their agents, discriminated against Mr. Rakoski due to his disabilities by subjecting Mr. Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

212.     Upon information and belief, Defendants replaced Mr. Rakoski with a lesser or similarly qualified, non-disabled employee.

213.     Rowland discharged, expelled, barred, and/or discriminated against Mr. Rakoski in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Rakoski under the NYSHRL.

214.     Rowland aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

215.     Defendants' actions were wanton, malicious, and/or oppressive.

216.     Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Rakoski.

217.     As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

218.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

## (Race and Color Discrimination in Violation under New York State Human Rights Law, Executive Article 15, Section 296))

## Plaintiff v. All Defendants (the Company and Rowland)

219.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

220.     The Company is an employer under the New York State Human Rights Law (NYSHRL) because it employs four or more persons.

221.     Mr. Rakoski is African American in terms of his race and brown in terms of his skin color.

222.     Defendants harassed and discriminated against Mr. Rakoski with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Rakoski's race (African American) and/or color (black).

223.     Additionally, the Defendants engaged in a pattern or practice of disparate treatment toward non-white/non-Caucasian employees.

224.     Defendants subjected Mr. Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment because of his race and/or color.

225.     Rowland discharged, expelled, barred, and/or discriminated against Mr. Rakoski in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Rakoski under the NYSHRL.

226.     Rowland aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

227.     The Defendants' actions were wanton, malicious, and/or oppressive.

228.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Rakoski.

229.     As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

230.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

### (Race and Color Discrimination in Violation of Title VII)

### Plaintiff v. The Company

231.     Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

232.     During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§ 2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

233.     Mr. Rakoski is African American in terms of his race and brown in terms of his skin color.

234.     The Company, including, but not limited to, its agents, harassed and discriminated against Mr. Rakoski with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's race and color.

235.     Additionally, the Company engaged in a pattern or practice of disparate treatment toward non-white/non-Caucasian employees.

236.     More specifically, the Company subjected Mr. Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment because of his race and/or color.

237.     Upon information and belief, the Company replaced Plaintiff with a lesser or similarly qualified non-African American employee.

238.     The Company, including through its agents and employees, committed a discriminatory act in a willful, wanton, and/or malicious manner.

239.     As a direct and proximate result of the Company's violation of Title VII, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

240.     Plaintiff seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

**COUNT VI**

**(Race and Color Discrimination in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (the Company and Rowland)**

241.    The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

242.    During all relevant periods, the Company was an employer under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981") because it employed one or more persons.

243.    Mr. Rakoski is African American in terms of his race and brown in terms of his skin color.

244.    The Defendants harassed and discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's race (African American) and color (brown).

245.    Additionally, the Defendants engaged in a pattern or practice of disparate treatment toward non-white/non-Caucasian employees.

246.    More specifically, the Defendants subjected Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment because of his race and/or color.

247.    Upon information and belief, the Defendants replaced Plaintiff with a lesser or similarly qualified non-African American employee.

248.    Rowland harassed and discriminated against Mr. Rakoski with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Rakoski's race and/or color.

249.     Upon information and belief, Rowland made the decision to fire Mr. Rakoski, and/or recommended Mr. Rakoski's termination, and/or his discriminatory animus was relied upon by the Company when the Company terminated Mr. Rakoski.

250.     Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of the Plaintiff and/or conduct so reckless to amount to such disregard.

251.     As a direct and proximate result of the Defendants' violations of Section 1981, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

252.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. The Company**

253.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

254.     Mr. Rakoski engaged in protected activity under the ADA, including, but not limited to, by raising protected concerns related to disability-related harassment and discrimination, and/or by requesting and/or utilizing disability-related accommodations.

255.     The Company discriminated against and/or retaliated against Mr. Rakoski for engaging in activities protected under the ADA, by subjecting Mr. Rakoski to adverse actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

256.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Rakoski's exercising of, or enjoyment of, one or more rights granted by the ADA.

257.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Rakoski.

258.     As a direct and proximate result of the Company's violation of the ADA, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

259.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (the Company and Rowland)**

260.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

261.     Mr. Rakoski engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Rakoski's disability, race, and/or color.

262.     Mr. Rakoski additionally engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), by, (i) requesting and/or utilizing reasonable accommodations, (ii) protesting the failure to provide reasonable accommodations, and (iii) raising disability- related discrimination concerns.

263.     Defendants discriminated against and/or retaliated against Mr. Rakoski for engaging in activity protected under the NYSHRL, by subjecting Mr. Rakoski to adverse employment actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

264.     Rowland discharged, expelled, barred, and/or discriminated against Mr. Rakoski in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Rakoski under the NYSHRL.

265.     Rowland aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

266.     Defendants acted with willful and/or reckless disregard to the state protected rights of Mr. Rakoski.

267.     As a direct and proximate result of the Defendants' violation of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

268.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IX

**(Retaliation for Disclosing to One or More Supervisor Policies or Practices of the Company Mr. Rakoski Reasonably Believed Violated the Law in Violation of New York Labor Law, Section 740)**

**Plaintiff v. All Defendants (the Company and Rowland)**

269.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

270.     Mr. Rakoski disclosed to one or more supervisors policies or practices he reasonably believed violated the NYSHRL, the FMLA, and the New York Paid Sick Leave including denying him accommodations for his disabilities, interfering with protected leave, retaliating against him for taking protected leave, harassing him and subjecting him to a hostile work environment based on his protected classes, and wrongfully terminating him based on his protected classes and/or because he had taken protected leave.

271.     Mr. Rakoski additionally disclosed to one or more supervisors policies or practices he reasonably believed violated state and federal wage laws (including the Fair Standards Labors Act and the New York Labor Law).

272.     Defendants discriminated against and/or retaliated against Mr. Rakoski for disclosing policies or practices he reasonably believed violated the law to one or more supervisors by subjecting Mr. Rakoski to adverse employment actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

273.     Rowland aided, abetted, incited, coerced, and/or compelled the Company's retaliatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the law.

274.     Defendants acted with willful and/or reckless disregard to the state protected rights of Mr. Rakoski.

275.     As a direct and proximate result of the Defendants' violation of the NY Labor Law Section 740, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

276.     The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory damages

(including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for

emotional distress (including, but not limited to, damages for emotional pain, suffering,

inconvenience, mental anguish, and loss of enjoyment of life),  attorneys' fees, interest, and costs.

### COUNT X

**(Failure to Pay Wages in Violation of 29 U.S.C. §§ 201 et seq.)**

**Plaintiff v. All Defendants (the Company and Rowland)**

277.     The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

278.     At all relevant times, the Company was an enterprise engaged in interstate

commerce as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter,

"FLSA").

279.     Indeed, the Company has employees engaged in commerce or in the production of

goods for commerce, and/or has employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for interstate commerce by any person.

280.     Furthermore, the Company is an enterprise whose annual gross volume of sales

made or business done is greater than or equal to $500,000.

281.     At all relevant times, Mr. Rakoski was an employee who was engaged in

interstate commerce or in the production of goods for interstate commerce.

282.     Mr. Rakoski was a non-exempt employee and was routinely forced to clock out and work through his lunch break, which resulted in a deduction from recorded hours when calculating his pay.

283.     Additionally, Mr. Rakoski was required to work after his normal work hours but forbidden from clocking in and getting paid for that time.

284.     The Company, including Rowland, were aware and required that Mr. Rakoski work hours off the clock.

285.     Rowland is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries, and the responsibility to maintain employment records. As such, Rowland is individually liable under the FLSA.

286.     Defendants knowingly and willfully failed to pay Mr. Rakoski all pay that he was owed (both by failing to pay him the applicable minimum wage and failing to pay him for overtime hours worked) in violation of the FLSA.

287.     As a direct and proximate result of the Defendants' violations of the FLSA, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to, lost wages.

288.     Mr. Rakoski seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation of the FLSA, interest on the lost wages and the liquidated damages, attorneys' fees, and costs.

**COUNT XI**

**(Retaliation in Violation of the FLSA – 29 U.S.C. § 215(a)(3))**

**Plaintiff v. All Defendants (the Company and Rowland)**

289.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

290.     The Company is an enterprise engaged in interstate commerce as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter, "FLSA").

291.     Indeed, the Company has employees engaged in commerce or in the production of goods for commerce, and/or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

292.     Furthermore, the Company is an enterprise whose annual gross volume of sales made or business done is greater than or equal to $500,000.

293.     Additionally, during all relevant periods, Mr. Rakoski was an employee who was engaged in interstate commerce or in the production of goods for interstate commerce.

294.     Plaintiff engaged in activity protected under the FLSA, including, but not limited to, by voicing concerns that the Company was improperly deducting time for lunches he was not taking, requiring him to work off the clock, and refusing to pay him for all hours worked (and that therefore the Company was failing to pay him both minimum wage and overtime wages for hours worked).

295.     Rowland is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries, and the responsibility to maintain employment records. As such, Rowland is individually liable under the FLSA.

296.     Defendants discriminated against and/or retaliated against the Plaintiff for opposing one or more practices made unlawful by the FLSA, including, but not limited to, by subjecting Mr. Rakoski to adverse employment actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

297.     Defendants willfully violated the FLSA and did not have a good faith basis for believing that its actions were not in violation of the FLSA.

298.     As a direct and proximate result of the Defendants' violations of the FLSA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

299.     Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits, including back pay and front pay, punitive damages, liquidated damages (i.e. double damages), interest, attorneys' fees, and costs.

## COUNT XII

**(Failure to Pay Wages in Violation of New York Labor Law - NY Labor Ch. 31, Art. 6)**

**Plaintiff v. All Defendants (the Company and Rowland)**

300.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

301.     The Company (is an employer as defined under the New York Labor Law, NY Labor Ch. 31, Art. 6 § 190.

302.     The Company employed Mr. Rakoski.

303.    Rowland is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Law. As such, Rowland is individually liable under the NY Labor Law Ch. 31, Art. 6 § 198-a.

304.    In violation of New York Labor Law Ch. 31, Article 6 § 191, Ch. 31, Article 6 § 191, the Company routinely failed to pay Mr. Rakoski all wages that he was owed for the hours that he worked (failing both to pay him minimum wage for those hours and failing to provide him overtime pay).

305.    The violation of New York Labor Law, Ch. 31, Article 6 § 191 by the Company, and Rowland was knowing, willful, and made with a reckless disregard of the rights of Mr. Rakoski and/or conduct so reckless to amount to such disregard.

306.    As a direct and proximate result of the violation of New York Labor Law, Ch. 31, Article 6 § 191 by the Company and Rowland, Mr. Rakoski has suffered and continues to suffer damages, including, but not limited to lost wages.

307.    Mr. Rakoski seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation, interest on the lost wages and the liquidated damages, attorneys' fees, and costs.

## COUNT XIII

**(Retaliation in Violation of New York Labor Law – NY Labor Ch. 31, Art. 7 § 215)**

**The Plaintiff v. All Defendants (the Company and Rowland)**

308.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

309.    The Company is an employer as defined under the New York Labor Law, NY Labor Ch. 31, Art. 1 § 2.

310.     The Company employed Mr. Rakoski.

311.     Rowland is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Ch. 31, Art. 7 § 215. As such, Rowland is individually liable under the NY Labor Ch. 31, Art. 7 § 215.

312.     Mr. Rakoski engaged in activity protected under the New York Labor law, including, but not limited to, by voicing concerns that the Company was improperly deducting time for lunches he was not taking, requiring him to work off the clock, and refusing to pay him for all hours worked.

313.     The Company and Rakoski then retaliated against Mr. Rakoski for opposing one or more practices made unlawful by the New York Labor Law, including, but not limited to, by subjecting Mr. Rakoski to adverse employment actions, including, but not limited to, subjecting Mr. Rakoski to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, removing his desk, and/or terminating Mr. Rakoski's employment.

314.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, compensatory damages (including, but not limited to, emotional distress damages, reduced earning capacity, and lost compensation and benefits, including back pay and front pay), liquidated damages, interest, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Harvey Rakoski, respectfully prays that this honorable court:

A.   Schedule this matter for trial by jury;

B.   Find the Defendants liable on all counts;

C.   Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his lost pay, corresponding to all wages owed, including for failure to pay minimum wages and overtime pay.

J.  Award the Plaintiff liquidated damages related to the failure of the Company to pay all wages owed.

K.  Award the Plaintiff his reasonable attorney's fees;

L.  Award the Plaintiff interest and costs;

M.  Award the Plaintiff all other damages to which he is entitled; and

N.  Grant such further relief as is just and equitable.

Respectfully Submitted,

HARVEY RAKOSKI

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:   February 17, 2023          By:        */s/Timothy Brock*_____

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207